IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ] | |
| ] | |
| ] | |
| v.   ] | File No. 1:19-CR-00297-ELR-JSA |
| ] | |
| TODD CHRISLEY a/k/a ] | |
| MICHAEL TODD CHRISLEY, ] | |
| JULIE CHRISLEY, and ] | |
| PETER TARANTINO, ] | |
| ] | |
| Defendants. ] | |

### DEFENDANT PETER TARANTINO'S MOTION TO SEVER

In this case, the Government alleges three separate conspiracies in the same indictment. The first is a bank fraud conspiracy, involving Defendants Todd and Julie Chrisley between 2009 and 2012. The second is a wire fraud conspiracy, involving the Chrisleys in 2014. The third—and the only one involving Defendant Peter Tarantino—is a conspiracy to defraud the IRS in which Tarantino did not allegedly participate until 2016. The Indictment makes no effort to connect this third conspiracy to either of the other two and, more importantly, does not connect *Tarantino* to any of the acts involved in the first two conspiracies. To address the distinct nature of the three conspiracies and ensure that a jury does not simply blur the question of Tarantino's innocence or guilt with the Chrisleys', Tarantino

should be severed from the Chrisleys and tried separately on the counts against him.

## BACKGROUND

On August 13, 2019, the grand jury returned a twelve-count indictment charging Todd Chrisley, Julie Chrisley, and their accountant, Peter Tarantino, with various offenses. These counts fall into three broad categories: bank fraud, wire fraud, and tax fraud.

The first category (Counts One through Six) involves bank fraud: one count of conspiracy to commit bank fraud and five counts of bank fraud. Indictment ¶¶ 15-25. These counts only allege conduct by the Chrisleys. *Id*. The Government alleges Todd and Julie Chrisley conspired to submit fabricated personal financial information to banks in order to obtain various loans. *Id*. ¶¶ 17-25. According to the Indictment, this conspiracy lasted from 2007 to 2012. *Id*. ¶ 16. In discussing the fabricated documents, the indictment references an unnamed co-conspirator, who created the documents. *Id*. ¶ 18-19. The indictment also describes a message from Todd Chrisley where he requests that the co-conspirator "find a crooked accountant to [prepare fabricated documents]." *Id*. ¶ 19. It later references a different accountant, whose letterhead the unnamed co-conspirator used in sending

fraudulent letters. *Id*. ¶ 22. The Indictment does not indicate that Tarantino is any of these unnamed individuals, and for good reason—he is none of them.

The second category (Counts Seven and Eight) involves wire fraud: one count of wire fraud conspiracy and one count of wire fraud. *Id*. ¶¶ 26-36. Like the bank fraud counts, these counts only allege conduct by the Chrisleys. *Id*. The Government alleges that the Chrisleys sent fabricated documents—including some that had been physically cut apart and rearranged—as part of a lease application for a home in California. *Id*. ¶¶ 28-36. These acts allegedly occurred between July and October of 2014. *Id*. ¶¶ 27.

The third category (Counts Nine through Twelve) involves various forms of tax fraud: one count of conspiracy to defraud the United States, one count of tax evasion, and two counts of aiding the filing of a false tax return. *Id*. ¶¶ 37-60. The tax evasion count (Count Ten) only alleges conduct by the Chrisleys. *Id*. ¶¶ 54-56 The aiding the filing of a false tax return counts (Counts Eleven and Twelve) only charge Tarantino. *Id*. ¶¶ 57-60.

The conspiracy count (Count Nine) alleges acts by Tarantino in addition to the Chrisleys. *Id*. ¶¶ 37-53. The Indictment's allegations for this count primarily concern the Chrisleys' alleged failure to pay taxes and alleged efforts to impede the lawful functions of the IRS. *Id*. ¶¶ 40-43. As to Tarantino, the Indictment alleges

he provided false information to the IRS. *Id*. ¶¶ 46-48. Although the conspiracy is alleged to have occurred between 2010 and early 2018, the Indictment suggests that Tarantino did not join the conspiracy until 2016. *Id*. ¶¶ 38, 47, 53(c).

## ARGUMENT

The Indictment alleges three separate conspiracies, only one of which purports to involve Peter Tarantino. The tax-related charges against Tarantino are factually and temporally distinct from the other charges in the Indictment, which allege bank and wire fraud only by the Chrisleys. Given the volume and nature of the evidence involved, the bank fraud and wire fraud charges are likely to overwhelm the jury's attention in this case, making it likely that the question of Tarantino's innocence or guilt will be lost in the shuffle. To alleviate this risk of prejudice, this Court should sever Tarantino from the Chrisleys and try him separately on the counts against him (Counts Nine, Eleven, and Twelve).

Federal Rule of Criminal Procedure 14(a) allows a court to sever counts or defendants "if the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." In assessing a motion to sever, "the district court must balance the possibility of prejudice to the defendant against the public interest in judicial efficiency and economy." *United States v. Feldman*, 936 F.3d 1288, 1297 (11th Cir. 2019).

Severance of defendants is mandatory if (1) "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants," or (2) if a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The second scenario applies when "compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant." *Id.* Severance is also appropriate "where one defendant is being charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants." *United States v. Blankenship*, 382 F.3d 1110, 1125 & n.10 (11th Cir. 2004).

A Rule 14 severance should be granted "if the defendant can demonstrate that a joint trial would result in specific and compelling prejudice to the conduct of his defense." *United States v. Blasingame*, 219 Fed. App'x 934, 948 (11th Cir. 2007). The analysis for "compelling prejudice" asks "whether under all the circumstances of a particular case, as a practical matter, it is within the capacity of the jury to follow the instructions and accordingly . . . appraise the independent evidence against each defendant's own acts, statements and conduct." *Id.* Put differently, a defendant can show compelling prejudice "by showing that the jury

[would be] unable to sift through the evidence and make an individualized determination as to each defendant." *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998).

### A. Severance is proper here because the Indictment alleges multiple, distinct conspiracies, only one of which involves Tarantino.

If he is not severed from the Chrisleys, Tarantino will be prejudiced by the jury's inability to appraise his conduct independently from the Chrisleys' conduct. Only three counts of the 12-count indictment even concern Tarantino, and two of those (regarding aiding the filing of false tax returns) only charge him. The third count against Tarantino is for conspiracy to defraud the United States, specifically the IRS. Meanwhile, the Chrisleys are charged not only with defrauding the IRS, but also evading taxes, bank fraud, conspiring to commit bank fraud, wire fraud, and conspiring to commit wire fraud.

The bank and wire fraud charges (solely against the Chrisleys) and the tax fraud charges (involving all three defendants) are different in kind. The tax fraud counts allege tax evasion, the filing of false tax returns and a conspiracy to impede and impair the lawful functions of the IRS. Indictment ¶¶ 37-60. On the other hand, the bank and wire fraud counts involve the Chrisleys allegedly fabricating documents to defraud banks and a lessor. *Id.* ¶¶ 15-36. Tarantino's name never

comes up in the Indictment's discussion of these other two conspiracies, as he has no involvement to discuss.

Moreover, the Indictment does not allege that Tarantino is temporally connected to the other conspiracies. The bank fraud conspiracy allegedly occurred between 2007 and 2012. *Id*. ¶ 16. The wire fraud conspiracy is limited to a few months in 2014. *Id*. ¶ 27. Meanwhile, the first act Tarantino is alleged to have committed as part of the tax fraud conspiracy did not occur until September 2016. *See, e.g.*, *id*. ¶¶ 47, 53(c).

A defendant who is only charged in a portion of a case's counts faces a risk of prejudice when the jury, having heard evidence against a codefendant, "impermissibly and prejudicially consider[s] such evidence against [the defendant] as well." *United States v. Paul*, 150 F.R.D. 696, 699-700 (S.D. Fla. 1993); *see also Zafiro*, 506 U.S. at 539 ("When many defendants are tried together in a complex case and they have markedly different degrees of culpability, the risk of prejudice is heightened."). Such circumstances pose the additional risk of forcing a defendant to sit through a lengthy trial, only some of which relates to that defendant. *Paul*, 150 F.R.D. at 700. All told, trying counts that bear no relationship to each other and "are dependent upon different witnesses and documents . . . has no sound basis in law." *Id*. Severance obviates these concerns.

Here, the Indictment only alleges that Tarantino is involved with one of the three conspiracies charged in this case. It makes no effort to connect Tarantino's involvement in that conspiracy to either of the others. Thus, the risk of prejudice is not simply that a jury might have to sort through defendants' disparate levels of participation in the same conspiracy. *See United States v. Leavitt*, 878 F.2d 1239, 1340 (11th Cir. 1989) ("The fact that a defendant only participated in one aspect of the conspiracy does not by itself warrant severance.") The problem here is that the Indictment asks the jury to sort through multiple, unconnected conspiracies. At most, those conspiracies are connected by the presence of the Chrisleys, rather than any acts by Tarantino. Severance is warranted here to ensure that jurors can assess these separate conspiracies separately.

### B. The volume and nature of the evidence pertaining to the Chrisleys' charges enhances the risk of jury confusion, prejudicing Tarantino's defense.

In addition, the volume and nature of the evidence that would be involved in a joint trial counsels in favor of severance. The Government has produced nearly one million documents in discovery in this case. The vast majority of those documents are unrelated to the tax fraud conspiracy alleged against Tarantino.[1] The

---

[1] To be clear, the government has represented that most of the documents produced do not pertain to the tax fraud counts against Tarantino. Though Tarantino has not

government obtained a hard drive from a third party and executed search warrants, gathering information that does not pertain to the allegations against Tarantino. The issue here is not simply that the Government might introduce more evidence on the same charge against the Chrisleys than against Tarantino. *See United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997) (rejecting disparity of evidence between codefendants as a basis for severance). Rather, the problem is that the Government must introduce more evidence at trial because the Chrisleys' are charged with more (and different) offenses than Tarantino, all of which are document-intensive charges of conspiracy and fraud.

Sifting through this volume of evidence to parse out the fraction that concerns Tarantino would be a significant burden on the jury, hindering its ability to reliably assess Tarantino's guilt or innocence separately from the Chrisleys'. Where multiple counts allege "conspiracy or conspiracy-like offenses involving subtle legal distinctions," a large number of witnesses, and "multiple defendants not involved in all conspiracies alleged," a defendant's interests may "not be adequately protected by a proper charge of the law." *United States v. Caldwell*, 594 F. Supp. 548, 552 (N.D. Ga. 1984). In such situations, prejudice accrues "from the

---

been forced to dig through this haystack for the needle's worth of documents concerning him, a joint trial seemingly would require the jury to do so.

sheer inability of the jurors to assimilate and correlate applicable items of evidence to the numerous conspiracy or conspiracy-like offenses alleged." *Id*. However, by breaking up the disconnected charges across multiple trials, "the risk of juror confusion can be substantially reduced." *Id*. Severance is thus a proper solution to the looming danger of jury confusion here.

Moreover, the allegations against the Chrisleys in the bank and wire fraud conspiracies are more dramatic, enhancing the risk of prejudicial jury confusion. In the tax fraud conspiracy, the allegations are relatively pedestrian: the Chrisleys allegedly hid their income, Tarantino filed allegedly-false tax returns for them, and Tarantino gave allegedly-misleading or false information to IRS employees. Indictment ¶¶ 37-60.

Meanwhile, in the wire fraud conspiracy, the Government alleges that the Chrisleys provided fabricated documents that had been "physically cut and then glued or taped together." *Id*. ¶¶ 29, 31. The bank fraud conspiracy presents an even greater risk of inflammatory confusion. These counts also involve the Chrisleys allegedly fabricating documents, now with the aid of an unnamed co-conspirator. *Id*. ¶¶ 17-25. Further, these allegations make multiple references to other accountants who are not Tarantino. One allegation claims that Todd Chrisley sent an email in 2008 asking for "a crooked accountant" to fabricate documents. *Id*. ¶

10

19. Another claims that the Chrisleys and the unnamed co-conspirator sent a false letter in 2012 using an unnamed accountant's letterhead and signature. *Id.* ¶ 22. All agree, however, that Tarantino is not the accountant referenced here.

These allegations of the Chrisleys using accountants to perform other misdeeds could confuse the jury about which counts Tarantino is alleged to be involved in. Essentially, the Government discusses accountants in two of the three conspiracies alleged, only one of which involves Tarantino. The allegations involved in the bank and wire fraud conspiracies are irrelevant to the allegations against Tarantino. Combined with the voluminous evidence that the jury will have to sort through, presenting these allegations—irrelevant to Tarantino's alleged actions—only enhances the risk of jury confusion.

Severance cleanly solves the problem. By severing Tarantino, the Court can prevent prejudicial facts about the other conspiracies from bleeding into the jury's assessment of Tarantino's innocence or guilt.

## CONCLUSION

Put simply, the allegations against Tarantino in the Indictment are significantly different from those against the Chrisleys. Throwing three disparate conspiracies together in the same trial and hoping that the jury will be able to parse out a determination of Tarantino's culpability for the one in which he is alleged to


have participated is a risk that this Court should not take. As currently presented, the jury likely will not be able to make a reliable assessment of Tarantino's innocence or guilt separate from the Chrisleys'. Severance is thus an appropriate remedy to avoid compelling prejudice to Tarantino's defense. This Court should grant Tarantino's motion, sever him from the Chrisleys, and order him to be tried separately on Counts Nine, Eleven, and Twelve.

This 20th day of December, 2019.

**MILLER & MARTIN PLLC**

By: */s/ Daniel P. Griffin*
　　Daniel P. Griffin
　　Georgia Bar No. 310760
　　Alexander C. Vey
　　Georgia Bar No. 307899

1180 West Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309-3407
Tel. No.: (404) 962-6100
Fax No.: (404) 962-6300
Danny.Griffin@millermartin.com
Alex.Vey@millermartin.com

***Attorneys for Defendant Peter Tarantino***

## **LR 7.1(D), NDGA. CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief was prepared with one of the font (Times New Roman) and point (at least 14 point) selections approved by the Court in LR 5.1C, NDGa.

This 20th day of December, 2019.

> By: */s/ Daniel P. Griffin*
> Daniel P. Griffin
> Georgia Bar No. 310760
>
> 1180 West Peachtree Street, NW
> Suite 2100
> Atlanta, Georgia 30309-3407
> Tel. No.: (404) 962-6100
> Fax No.: (404) 962-6300
> Danny.Griffin@millermartin.com
>
> ***Attorney for Defendant Peter Tarantino***

## CERTIFICATE OF SERVICE

I hereby certify that on the below date I electronically filed **DEFENDANT PETER TARANTINO'S MOTION TO SEVER** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

This 20th day of December, 2019.

         By: */s/ Daniel P. Griffin*
            Daniel P. Griffin
            Georgia Bar No. 310760