ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

FEB 1 5 2022

Kevin P. Weimer, Clerk
By
Deputy Clerk



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Superseding Indictment |
| *v.* | No. 1:19-CR-297-ELR-JSA |
| TODD CHRISLEY A/K/A MICHAEL TODD CHRISLEY, JULIE CHRISLEY, AND PETER TARANTINO | |

THE GRAND JURY CHARGES THAT:

## Background

At times relevant to this Superseding Indictment:

*The Defendants*

1. TODD CHRISLEY (a/k/a "MICHAEL TODD CHRISLEY") and JULIE
CHRISLEY were a married couple who, at one point, resided in the state of
Georgia, and at a later point, in the state of Tennessee.

2. PETER TARANTINO was a Certified Public Accountant and owner of
CPA Tarantino, an accounting firm based in Roswell, Georgia. Beginning at least
as early as 2015, TODD and JULIE CHRISLEY engaged the services of
TARANTINO to work as their accountant. TODD and JULIE CHRISLEY also
authorized TARANTINO to act as their "power of attorney," meaning he was
authorized to discuss their taxes with the Internal Revenue Service ("IRS").

*The Chrisley Business Entities*

3.  From at least as early as 2008 through approximately 2012, TODD and JULIE CHRISLEY, together with an individual known to the Grand Jury (hereinafter "Co-conspirator A"), controlled a Georgia company named "Chrisley Asset Management," which earned millions of dollars in commissions and fees from managing foreclosed properties that were later sold to third parties.  TODD and JULIE CHRISLEY also owned a number of other companies, including "Chrisley and Company," which was a Georgia company that they used to receive their income from Chrisley Asset Management.

4.  Beginning in 2013, TODD and JULIE CHRISLEY controlled a company named "7C's Productions."  In July 2013, 7C's Productions was registered with the Georgia Secretary of State as a Georgia corporation.  JULIE CHRISLEY was later listed as the company's Chief Executive Officer.  In 2016, 7C's Productions was registered with the Tennessee Secretary of State as a Tennessee corporation, and "E.F.C." was listed as the company's registered agent.

5.  Beginning in approximately 2014, TODD and JULIE CHRISLEY, together with various family members, starred in the reality television show *Chrisley Knows Best* and appeared on other television and radio programs.  A television production company (hereinafter "the Production Company") produced *Chrisley Knows Best* and paid the Chrisleys and other family members for their work on the show.  TODD and JULIE CHRISLEY used 7C's Productions as a "loan-out company," which was a common way for actors and entertainers to be paid for their services.  Over the years, various entertainment and production companies

2

paid millions of dollars to TODD and JULIE CHRISLEY, the vast majority of which was deposited into 7C's Productions bank accounts.

***The Internal Revenue Service and Federal Taxes***

6. The IRS was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting taxes owed to the Treasury of the United States.

7. Taxpayers who owed money to the IRS were generally required to submit tax payments on or before the date their tax return was due.

8. Married couples typically filed tax returns under the status of "married filing jointly," "married filing separately," or "head of household." When married taxpayers elected to file a tax return as "married filing separately," one spouse was listed as the filer (hereinafter, the filing spouse) while the other spouse was listed as the spouse (hereinafter, the listed spouse).

9. The IRS had numerous enforcement mechanisms to collect delinquent taxes, including filing liens on real property held within a particular county and levying bank accounts or other assets. When issuing a lien or levy against a delinquent taxpayer who filed "married filing separately," the lien or levy attached only to property owned by the filing spouse. The IRS could not issue a lien or levy against property owned only by the listed spouse unless it could prove the property was actually owned by the filing spouse.

***Todd and Julie Chrisley's Federal Tax Filings***

10. In 2010, TODD and JULIE CHRISLEY filed separate 2009 federal income tax returns as "married filing separately." TODD CHRISLEY's 2009 federal

income tax return was filed on or about October 15, 2010 with TODD CHRISLEY as the filing spouse and JULIE CHRISLEY as the listed spouse.  TODD CHRISLEY reported a tax due and owing of $701,249.  On or about May 29, 2012, TODD CHRISLEY caused to be filed an amended 2009 federal income tax return, still as "married filing separately," reporting a tax due and owing of more than $400,000.

11. TODD and JULIE CHRISLEY filed their 2010, 2011, and 2012 federal tax returns as "married filing jointly" on or about May 6, 2011, October 15, 2012, and December 16, 2013, respectively.  These tax returns reported taxes due and owing of $0, $50,073, and $23,959 for the 2010, 2011, and 2012 tax years, respectively.

12. TODD and JULIE CHRISLEY did not timely submit tax payments to the IRS when filing TODD CHRISLEY's 2009 tax return or their joint 2011 and 2012 tax returns.

13. At a certain point, the IRS placed TODD and JULIE CHRISLEY in collection status for unpaid federal income taxes.  These collection actions were stayed from the time that TODD CHRISLEY entered bankruptcy proceedings in 2012 until the bankruptcy action was discharged in 2015.  Afterwards, IRS Revenue Officers filed liens or levies in counties in which TODD and JULIE CHRISLEY lived or owned property in attempts to collect the back taxes owed.

14. TODD and JULIE CHRISLEY did not timely file federal income tax returns or timely submit tax payments to the IRS for the 2013, 2014, 2015, or 2016 tax years.

**Count One**
*Conspiracy to Commit Bank Fraud*
(18 U.S.C. § 1349)

15. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 14 of this Superseding Indictment as if fully set forth herein.

16. Beginning at least as early as 2007 and continuing until in or about 2012, the exact dates unknown, in the Northern District of Georgia and elsewhere, the defendants, TODD CHRISLEY and JULIE CHRISLEY, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and Co-conspirator A, to execute a scheme and artifice to defraud multiple financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain money, funds, and credits owned by and under the custody and control of the aforementioned financial institutions by means of materially false and fraudulent pretenses, representations, and promises and by omission of material facts, in violation of Title 18, United States Code, Section 1344.

**Manner and Means**

17. TODD and JULIE CHRISLEY, together with Co-conspirator A (collectively, "the conspirators"), conspired to submit false materials, such as fabricated bank statements and false personal financial statements, to financial institutions to obtain millions of dollars in loans, much of which they used for their own personal benefit.

18. Throughout the conspiracy, the conspirators submitted false documents to banks when applying for loans, including fabricated bank statements listing inflated account balances, personal financial statements containing false information about available funds, false invoices, and false audit paperwork. For example, on or about November 5, 2007, Co-conspirator A sent an email to a bank that copied TODD CHRISLEY attaching a personal financial statement that falsely claimed TODD CHRISLEY had $4,000,000 at Merrill Lynch. When the bank employee requested account statements, Co-conspirator A sent TODD CHRISLEY a fabricated bank statement showing that TODD and JULIE CHRISLEY had $776,509.52 on deposit at Merrill Lynch. In response, TODD CHRISLEY told Co-conspirator A, "you are a fucking genious [sic]!!!! Just make it show 4 mil+." In actuality, TODD and JULIE CHRISLEY did not have a Merrill Lynch bank account at that time, and, after they later opened one in 2008, they never had more than approximately $17,000 on deposit there. As a result of false representations like these, a number of banks issued the conspirators millions of dollars in loans, much of which TODD and JULIE CHRISLEY used for their own personal benefit.

19. At various points during the conspiracy, TODD CHRISLEY personally directed Co-conspirator A to send false information to banks. For example, when one bank provided notice in April 2008 that it would not be able to renew a loan without updated financial information, TODD CHRISLEY instructed Co-conspirator A, "please get her the financials and I will get her the rest." After Co-conspirator A responded, "I don't have financials on any of these. She has

tax returns," TODD CHRISLEY wrote, "stop telling me this shit, create them like you always have, if I don't get these then they want [sic] renew the loans." When another bank provided notice in 2008 that it needed updated financial information, Co-conspirator A told TODD CHRISLEY that he/she needed assistance in putting the requested financials together.  This prompted TODD CHRISLEY to write, "giving me an excuse as to why you can not [sic] figure this out does not move it off of your plate, this is not what we discussed, passing it back and forth is not getting the results requested, if you do not know how to do this then find a crooked accountant to do it.  Ask [redacted] who her guy uses for his crooked shit."

20. The conspirators continued sending false information to banks even after receiving the initial loan disbursements.  At times, they did so in hopes of renewing certain loans. At other times, they did so to conceal their financial difficulties and to prevent the banks from seeking legal remedies to recoup the outstanding loan balances.  For example, on August 27, 2009, a bank representative notified TODD CHRISLEY and Co-conspirator A that "[t]he last personal financial statement we have in file (June 09) looks a lot like the 12/31/08 statement we received.  (cash, securities and real estate all exactly the same)  . . . .  We have a review coming up and would like to show this accurately so that no one asks questions as to how these could all be exactly the same 7 months later."  TODD CHRISLEY forwarded this message to Co-conspirator A and stated, "bring the securities down significantly."  The bank representative further notified TODD CHRISLEY and Co-conspirator A that "[w]e have a FDIC

examination beginning on Monday, Sept. 14 and your file will be one they will review.  Any assistance that you can provide here to update your statement would be appreciated."  TODD CHRISLEY forwarded this message to Co-conspirator A and stated, "this is why that pfs [personal financial statement] needs to reflect what you sent reigions [sic] and the FDIC."  Similarly, when attempting to provide evidence of available funds in April 2012 to a lender, JULIE CHRISLEY forwarded a copy of a check to Co-conspirator A and TODD CHRISLEY and instructed Co-conspirator A that the "[p]ost date is the only thing that needs to be changed."  The attached check stated that it had posted to a bank account on February 8, 2012.  TODD CHRISLEY then instructed Co-conspirator A to "make sure this is perfect before you send it to [REDACTED] as there cant be a screw up and she looks at this stuff fairly close."  Shortly thereafter, Co-conspirator A emailed TODD CHRISLEY an altered copy of the same check falsely showing that it had posted to the bank account on November 1, 2011.

21. The conspirators also used Chrisley Asset Management funds to pay down outstanding bank loans or for their own personal benefit.  The conspirators did so despite knowing that the company often had outstanding checks or debts that would not otherwise be covered by the remaining balances in its bank accounts.  As a result, Chrisley Asset Management began to have significant financial difficulties.

22. Once it became clear that Chrisley Asset Management was insolvent and the conspirators could no longer pay back the outstanding loans or obtain new

loans, TODD and JULIE CHRISLEY sought to hide their involvement in the conspiracy by falsely claiming that they did not know that Co-conspirator A had submitted false documents to financial institutions.  For instance, in an August 14, 2012 sworn affidavit, TODD CHRISLEY falsely asserted that Co-conspirator A had used their accountant's stationary and signature without the knowledge or consent of TODD CHRISLEY or the accountant.  However, approximately three months earlier, TODD CHRISLEY emailed Co-conspirator A, asking, "[C]an you place this on [the accountant's] letterhead with his signature and then sign Julie's name below [the accountant's]? address the letter to whom it may concern."  Shortly thereafter, Co-conspirator A sent an email to a lender that copied TODD CHRISLEY attaching letters purportedly signed by the accountant and JULIE CHRISLEY.

All in violation of Title 18, United States Code, Section 1349.

**Counts Two through Six**
*Bank Fraud*
(18 U.S.C. § 1344 and § 2)

23. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 22 of this Superseding Indictment as if fully set forth herein.

24. Beginning at least as early as 2007 and continuing until in or about 2012, the exact dates unknown, in the Northern District of Georgia and elsewhere, the defendants, TODD CHRISLEY and JULIE CHRISLEY, aided and abetted by each other and Co-conspirator A, did knowingly execute and attempt to execute a scheme and artifice to defraud the below-listed financial institutions, the deposits

of which were each then insured by the Federal Deposit Insurance Corporation, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of the below-listed financial institutions.

### Executions of the Bank Fraud Scheme

25. On or about the dates set forth below, in the Northern District of Georgia and elsewhere, the defendants, TODD CHRISLEY and JULIE CHRISLEY, aided and abetted by each other and Co-conspirator A, did knowingly execute and attempt to execute the above-described scheme to defraud as follows:

| Count | Date (on or about) | Execution and Attempted Execution |
|---|---|---|
| Count 2 | June 12, 2009 | Causing a false personal financial statement to be transmitted to Midtown Bank |
| Count 3 | July 6, 2009 | Causing a false personal financial statement to be transmitted to GulfSouth Private Bank |
| Count 4 | July 6, 2009 | Causing a false personal financial statement to be transmitted to United Community Bank |
| Count 5 | October 8, 2009 | Causing false audit paperwork to be transmitted to RBC Bank USA |
| Count 6 | August 18, 2010 | Causing a false personal financial statement to be transmitted to Wells Fargo |

All in violation of Title 18, United States Code, Section 1344 and Section 2.

### Count Seven
*Wire Fraud*
(18 U.S.C. § 1343)

26. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 25 of this Superseding Indictment as if fully set forth herein.

27. Beginning in or about July 2014 and continuing until in or about October 2014, the exact dates unknown, in the Northern District of Georgia and elsewhere, the defendant, JULIE CHRISLEY, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were false and fraudulent when made and caused to be made and that said omissions were and would be material.

### Scheme to Defraud

28. Even after terminating the relationship with Co-conspirator A in 2012, JULIE CHRISLEY continued to transmit fabricated bank statements and other false documents to third parties.  During a lease application process for a home in California, the property owner required JULIE CHRISLEY to provide a credit report and bank statements showing that TODD and JULIE CHRISLEY had at least $486,000 in their accounts.  When applying to rent the home in July 2014, JULIE CHRISLEY transmitted multiple fabricated financial documents to the homeowner's realtor.

11

29. On or about July 23, 2014, JULIE CHRISLEY sent an email to the realtor attaching a City National Bank account statement reporting a June 30, 2014, account balance of $86,790.86.  In reality, the City National Bank account had a balance of negative $14,530.89 in June 2014.

30. JULIE CHRISLEY's email sent on or about July 23, 2014 also included a hyperlink to a Google Drive file containing a false Equifax credit report in JULIE CHRISLEY's name.  This false credit report stated that JULIE CHRISLEY's credit scores were as follows:  767 (Equifax), 770 (Experian), and 817 (TransUnion). In reality, JULIE CHRISLEY's credit scores during that approximate timeframe were not that high.

31. On or about July 26, 2014, JULIE CHRISLEY sent a copy of a BB&T account statement reporting a July 23, 2014 account balance of $409,738.85.  In reality, this BB&T account had a balance of $0 as of June 20, 2014 and was closed shortly thereafter.

32. After submitting these false documents through her realtor to the property owner's listing agent, JULIE CHRISLEY obtained a lease for the California home, which the CHRISLEY family began using in mid-2014.  TODD and JULIE CHRISLEY then refused to pay the October 2014 rent, causing the property owner to have to threaten them with eviction.

### Execution of the Wire Fraud Scheme

33. On or about July 23, 2014, in the Northern District of Georgia and elsewhere, the defendant, JULIE CHRISLEY, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, and to obtain

money and property by means of materially false and fraudulent pretenses and representations, did, with intent to defraud, cause to be transmitted by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, namely, an email attaching a fabricated bank statement and a hyperlink to a Google Drive document containing a fabricated credit report.

All in violation of Title 18, United States Code, Section 1343.

### Count Eight
*Conspiracy to Defraud the United States*
(18 U.S.C. § 371)

34. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 33 of this Superseding Indictment as if fully set forth herein.

35. Beginning in or about 2010, and continuing until on or about February 2, 2018, the exact dates unknown, in the Northern District of Georgia and elsewhere, the defendants, TODD CHRISLEY, JULIE CHRISLEY, and PETER TARANTINO (collectively, "the Defendants"), did willfully, unlawfully, voluntarily, intentionally, and knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS of the United States Department of Treasury in the ascertainment, computation, assessment, and collection of revenue, that is, income taxes.

## Manner and Means

36. The Defendants carried out the conspiracy to defraud the IRS through the following manner and means, among others.

### The Defendants' Use of 7C's Productions to Hide Todd Chrisley's Income from the IRS

37. The Defendants, knowing that TODD CHRISLEY owed hundreds of thousands of dollars to the IRS for the 2009 tax year, sought to hide his income from the IRS by directing third parties to send millions of dollars to 7C's Productions.  Even though TODD CHRISLEY exercised control over 7C's Productions and had access to its bank accounts throughout the conspiracy, his name was never listed as an owner on documents filed with the Georgia or Tennessee Secretaries of State, and he was never a signatory on the company's bank accounts.  Instead, JULIE CHRISLEY – who, as the listed spouse on TODD CHRISLEY's original and amended 2009 tax return, did not owe the IRS money for that tax return – was listed on 7C's Productions corporate documents and had signature authority over its bank accounts.  The Defendants knew that TODD CHRISLEY also controlled 7C's Productions throughout the conspiracy period. In fact, TODD CHRISLEY had created a website named http://toddchrisley.org that included an article titled "Todd Chrisley Starts Film Production Company – 7CsProduction."   The Defendants purposefully kept TODD CHRISLEY's name off of 7C's Productions bank accounts and corporate filings to impede the IRS's ability to determine his income and collect his unpaid 2009 taxes.

14

***The Defendants' Efforts to Impede the IRS's Ability to Determine Their Income***

38. To further the conspiracy's objectives, the Defendants also sought to evade payment of their taxes by hiding their income from the IRS and impeding the IRS's collection efforts.  For instance, TODD and JULIE CHRISLEY removed JULIE CHRISLEY's name from a 7C's Productions bank account in order to hide their income from IRS collection officials.  On March 6, 2017, TARANTINO notified TODD and JULIE CHRISLEY that an IRS Revenue Officer had requested copies of bank statements for accounts over which TODD and JULIE CHRISLEY had signature authority.  In response to this request, the Defendants sent the IRS Revenue Officer a number of bank statements, including those for 7C's Productions.

39. On March 7, 2017 – the day after first learning of the IRS Revenue Officer's request – TODD and JULIE CHRISLEY caused E.F.C. to open a new 7C's Productions bank account at Bank of America with E.F.C. listed as the sole individual with signature authority.  JULIE CHRISLEY emailed a Bank of America representative a document entitled, "Board of Directors and Shareholders Resolution Adopting Amendment to Article of Incorporation for 7C's Productions."  This document falsely reported that the 7C's Productions "Board of Directors" had modified the company's Articles of Incorporation to state that E.F.C. owned 100% of the company's stock and would serve as the company president.  TODD and JULIE CHRISLEY then directed the entertainment and production companies to deposit future earnings into the new bank account.

40. TODD and JULIE CHRISLEY then and there knew that E.F.C. was not the president or owner of 7C's Productions.  In fact, on March 6, 2017, when having to show sufficient available funds during a loan application process, TODD and JULIE CHRISLEY told a mortgage broker that JULIE CHRISLEY – and not E.F.C. – was the true owner of 7C's Productions.  In keeping JULIE CHRISLEY's name off of the newly created 7C's Productions bank account, TODD and JULIE CHRISLEY sought to hide future income from the IRS.

### The Defendants' Knowledge of Taxpayers' Obligations to File Tax Returns and Pay Taxes

41. The Defendants continued to take part in this conspiracy even after acknowledging that they were required to file tax returns and pay taxes due and owing.  For instance, during a February 2017 interview, TODD CHRISLEY asserted, "Obviously the federal government likes my tax returns because I pay 750,000 to 1 million dollars just about every year, so the federal government doesn't have a problem with my taxes."  In fact, when making those public statements, TODD CHRISLEY knew that he owed hundreds of thousands of dollars to the IRS for the 2009 tax year and had not filed federal income tax returns – or paid any federal income taxes – for the previous several tax years.

42. The Defendants also continued to take part in this conspiracy even after receiving repeated notices that they were required to file tax returns and pay taxes due and owing.  In March 2017, the IRS sent correspondence to the Defendants about taxpayers' income tax obligations, including a pamphlet entitled, "Why Do I Have to Pay Taxes?", which stated, in part, "While taxpayers

have the right to contest their liabilities in the courts, taxpayers do not have the right to violate and disobey tax laws.  Unscrupulous individuals and promoters advocating willful noncompliance with the tax laws have used a variety of false or misleading arguments for not filing and paying taxes."  However, the Defendants then failed to timely file TODD and JULIE CHRISLEY's 2016 tax return or timely pay TODD and JULIE CHRISLEY's 2016 taxes when required to do so in April 2017.

### Tarantino's Efforts to Impede IRS Revenue Officers

43. Throughout the conspiracy, TARANTINO provided false and misleading information to IRS Revenue Officers who were assigned to collect TODD and JULIE CHRISLEY's back taxes.  TARANTINO falsely told Revenue Officers that TODD and JULIE CHRISLEY could not afford to pay their back taxes and that he did not know certain information about them, such as where they banked or lived.  In one instance, TARANTINO falsely told a Revenue Officer that TODD and JULIE CHRISLEY's daughter was the owner of 7C's Productions and that she paid TODD and JULIE CHRISLEY their salaries.  In providing this false and misleading information to Revenue Officers, TARANTINO sought to impede the IRS's efforts to collect TODD and JULIE CHRISLEY's unpaid taxes. TARANTINO frequently updated TODD and JULIE CHRISLEY on his interactions with the IRS Revenue Officers.  For instance, on September 23, 2016, TARANTINO told TODD and JULIE CHRISLEY, "The agent also asked some questions about your current living arrangements, etc. I avoided answering them."

17

44. TARANTINO also helped TODD and JULIE CHRISLEY avoid IRS scrutiny by willfully filing false and fraudulent 7C's Productions corporate tax returns that made it appear that the company was not making money.  On or about September 15, 2016, TARANTINO electronically filed a 7C's Productions corporate tax return for tax year 2015 omitting all information about 7C's Productions' revenue and distributions.  A year later, on or about September 15, 2017, TARANTINO electronically filed a 7C's Productions corporate tax return for tax year 2016 omitting the same information.  In doing so, TARANTINO sought to lead the IRS to believe that 7C's Productions did not earn any revenue during those tax years.

45. To further the conspiracy, on or about February 2, 2018, TARANTINO knowingly lied to federal agents employed by the Federal Bureau of Investigation and the IRS – Criminal Investigation Division, in that TARANTINO falsely stated that he did not know how TODD CHRISLEY earned his money.  These statements and representations were false because TARANTINO then and there knew that TODD CHRISLEY received income through 7C's Productions.

### False Statements to Third Parties Regarding Todd and Julie Chrisley's Tax Filings

46. Throughout the conspiracy, the Defendants falsely claimed to third parties that TODD and JULIE CHRISLEY had filed their federal tax returns.  For example, in March 2015, JULIE CHRISLEY sent individual income tax returns for the 2013 and 2014 tax years to a bank during a loan application process.  The

2013 tax return claimed that JULIE CHRISLEY earned $217,693 in income and owed $59,277 in taxes. The 2014 tax return claimed that JULIE CHRISLEY earned $737,971 in income and owed $264,406 in taxes. However, JULIE CHRISLEY then and there knew that neither return had been filed and that she had not paid the taxes listed as due and owing.

47. In early 2018, when trying to obtain a lease for a Bentley convertible and a bank loan, TODD and JULIE CHRISLEY directed TARANTINO to send copies of their individual income tax returns to a bank and an automobile dealership. On or about January 18, 2018, TARANTINO sent TODD and JULIE CHRISLEY an email with copies of their 2014, 2015, and 2016 individual and corporate income tax returns and stated, in part, "these are the returns that will be forwarded to Bentley and [a bank] tomorrow." The email stated that TODD and JULIE CHRISLEY owed $192,371 in taxes for 2015 and $219,222 for 2016. TARANTINO then emailed "file copies" of TODD and JULIE CHRISLEY's 2015 and 2016 individual and corporate tax returns to the automobile dealership, stating, "I have attached the last two years of business and personal tax filings as they pertain to Michael (Todd) and Julie Chrisley." TARANTINO also emailed "file copies" of TODD and JULIE CHRISLEY's 2014, 2015, and 2016 individual and corporate income tax returns to the bank and stated, "I have attached the last three years of personal and business tax filings." When causing these materials to be transmitted, the Defendants then and there knew that the 2014, 2015, and 2016 federal income tax returns had not been filed and that TODD and JULIE CHRISLEY had not paid the taxes listed as due and owing.

***Todd and Julie Chrisley's Expenditures During the Conspiracy***

48. Throughout the conspiracy, TODD and JULIE CHRISLEY made large personal expenditures while knowing they had significant tax liabilities and while claiming to the IRS that they had financial difficulties preventing them from paying those tax liabilities.  For example, from June 2010 through December 2010, TODD and JULIE CHRISLEY transferred more than $800,000 from Chrisley Asset Management into a Chrisley and Company bank account, much of which they then used for their own personal benefit.  However, TODD CHRISLEY failed to timely pay any of the $701,249 he initially reported as due and owing when filing his 2009 tax return in October 2010.

49. TODD and JULIE CHRISLEY continued to earn substantial income and make large expenditures after starting their television show.  In the promotional video for *Chrisley Knows Best*, which was filmed in 2013, TODD CHRISLEY stated, "I make millions of dollars a year, but we still have the same issues that parents who are making $40,000 a year have." TODD CHRISLEY further claimed that "in a year, we probably spend over $300,000, sometimes more, just on clothing." Over the next several years, TODD and JULIE CHRISLEY earned millions of dollars from *Chrisley Knows Best* and other media ventures, which they largely used for their own personal benefit, all while claiming they had insufficient funds to pay down TODD CHRISLEY's 2009 tax liability and while failing to timely file federal tax returns or pay income taxes for the 2013, 2014, 2015, or 2016 tax years.  For example, in June 2017 alone, the entertainment and production companies wired over $300,000 into a 7C's Productions bank account.

That same month, TODD and JULIE CHRISLEY spent over $7,000 at an electronics store, over $2,000 at a luxury retail store, and thousands of dollars at department and clothing stores. However, three months earlier, in March 2017, TARANTINO had told an IRS Revenue Officer that TODD CHRISLEY did not have sufficient resources to pay his 2009 tax liability.

## Overt Acts

50. In order to carry out the conspiracy and to accomplish the objects thereof, the Defendants committed various overt acts in the Northern District of Georgia and elsewhere, including, but not limited to, the following:

    a. On or about July 2, 2013, TODD and JULIE CHRISLEY caused 7C's Productions to be incorporated in the state of Georgia.

    b. On or about January 13, 2016, TODD and JULIE CHRISLEY caused 7C's Productions to be incorporated in the state of Tennessee, with E.F.C. listed on incorporation documents as the company owner.

    c. On or about September 15, 2016, TARANTINO electronically filed a 2015 corporate tax return for 7C's Productions omitting all information about 7C's Productions' revenue and distributions.

    d. On or about March 7, 2017, TODD and JULIE CHRISLEY caused E.F.C. to open a 7C's Productions' bank account with E.F.C. listed as the company "President."

    e. On or about March 7, 2017, JULIE CHRISLEY emailed a bank representative a false document entitled, "Board of Directors and

Shareholders Resolution Adopting Amendment to Article of
Incorporation for 7C's Productions."

f.   On or about September 15, 2017, TARANTINO electronically filed a
2016 corporate tax return for 7C's Productions omitting all
information about 7C's Productions' revenue and distributions.

All in violation of Title 18, United States Code, Section 371.

## Count Nine
*Tax Evasion*
(26 U.S.C. § 7201 and 18 U.S.C. § 2)

51. The Grand Jury re-alleges and incorporates by reference the factual
allegations contained in paragraphs 1 through 50 of this Superseding Indictment
as if fully set forth herein.

52. On or about October 15, 2010, TODD CHRISLEY caused to be filed a 2009
federal income tax return as "married filing separately," listing himself as the
filing spouse and JULIE CHRISLEY as the listed spouse, and reporting a tax due
and owing of $701,249.  On or about May 29, 2012, TODD CHRISLEY caused to
be filed an amended 2009 federal income tax return, still as "married filing
separately," reporting a tax due and owing of more than $400,000.

53. From in or about 2010 through on or about February 2, 2018, the exact
dates unknown, in the Northern District of Georgia and elsewhere, the
defendants, TODD CHRISLEY and JULIE CHRISLEY, aided and abetted by each
other and another individual known to the Grand Jury, willfully attempted to
evade and defeat the payment of income tax due and owing by TODD
CHRISLEY to the United States of America for the 2009 tax year by committing

22

the following affirmative acts, among others:  (a) using a nominee business entity to conceal income, (b) using nominee bank accounts to conceal income and pay expenses, and (c) providing false information to IRS employees.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

### Count Ten
*Aiding the Filing of False Tax Return*
(26 U.S.C. § 7206(2))

54. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 53 of this Superseding Indictment as if fully set forth herein.

55. On or about September 15, 2016, within the Northern District of Georgia, the defendant, PETER TARANTINO, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, a document, namely, a U.S. Corporate Tax Return, Form 1120S, for 7C's Productions.  That document was false and fraudulent as to material matters in that it omitted revenue generated by 7C's Productions as well as distributions to its owners, whereas TARANTINO then and there knew that 7C's Productions had in fact generated revenue and had made distributions to its owners during the 2015 tax year.

All in violation of Title 26, United States Code, Section 7206(2).

**Count Eleven**
*Aiding the Filing of False Tax Return*
(26 U.S.C. § 7206(2))

56. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 55 of this Superseding Indictment as if fully set forth herein.

57. On or about September 15, 2017, within the Northern District of Georgia, the defendant, PETER TARANTINO, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, a document, namely, a U.S. Corporate Tax Return, Form 1120S, for 7C's Productions. That document was false and fraudulent as to material matters in that it omitted revenue generated by 7C's Productions as well as distributions to its owners, whereas TARANTINO then and there knew that 7C's Productions had in fact generated revenue and had made distributions to its owners during the 2016 tax year.

All in violation of Title 26, United States Code, Section 7206(2).

**Count Twelve**
*Obstruction of Justice*
(18 U.S.C. § 1512(c)(2))

58. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 57 of this Superseding Indictment as if fully set forth herein.

59. From in or about February 2018 through in or about June 2019, within the Northern District of Georgia, the defendant, JULIE CHRISLEY, did corruptly obstruct, influence, and impede, and did corruptly attempt to obstruct, influence,

and impede, an official proceeding, namely a federal Grand Jury investigation in the Northern District of Georgia.

60. On or about February 1, 2018, federal agents served a federal Grand Jury subpoena from the Northern District of Georgia upon 7C's Productions. That subpoena required 7C's Productions to produce "all records, books of account, and other documents or papers relative to financial transactions" of TODD CHRISLEY, JULIE CHRISLEY, and E.F.C. That subpoena also required the production of "all contracts and agreements" between 7C's Productions and TODD CHRISLEY, JULIE CHRISLEY, and E.F.C as well as "all communications" including "emails and other forms of communication" with TODD CHRISLEY, JULIE CHRISLEY, and E.F.C.

61. In or about March 2018, JULIE CHRISLEY, acting on behalf of 7C's Productions, caused the submission of a number of financial records, contracts, and emails to the Grand Jury. This production included various emails to and from TODD CHRISLEY and JULIE CHRISLEY's email accounts.

62. On or about June 7, 2019, JULIE CHRISLEY, acting on behalf of 7C's Productions, submitted supplemental materials to the Grand Jury in response to the subpoena, including a fraudulent, backdated document. JULIE CHRISLEY's supplemental submission was accompanied by a certification that she signed under penalty of perjury stating that the supplemental materials had been made and were kept in the ordinary course of business. The fraudulent, backdated document that she submitted with the materials was the 7C's Productions corporation resolution identified in paragraphs 38 and 39 but that contained

handwritten changes.  Specifically, this version crossed out the statement that E.F.C. was the 100% owner of 7C's Productions and contained a handwritten note claiming that JULIE CHRISLEY was the 100% owner of 7C's Productions. This version also contained the signatures of both JULIE CHRISLEY and E.F.C. and was hand-dated March 8, 2017.  An attorney for 7C's Productions later represented to the Government in an email the following:

> [T]he resolution accompanying my letter of June 7, 2019, supplementing 7C's Productions, Inc.'s response to the grand jury subpoena, is the second or replacement resolution given to the Bank of America in March 2017.  By way of further explanation, a resolution was given to the bank on March 7 via the email contained in my June 7, 2019 letter.  On March 8, 2017, [E.F.C.] made changes to the resolution and brought it to the bank by hand.  That "second" resolution was first produced to you in my June 7, 2019 letter.  It was not attached to the original email from Julie to the bank.  The bank should have the first resolution as well as the second.

63. In truth, JULIE CHRISLEY knew that in March 2017, she had falsely told Bank of America that E.F.C. owned 7C's Productions by submitting the "first" corporate resolution to Bank of America via email.  JULIE CHRISLEY also knew that E.F.C. had not brought the later hand-edited resolution to Bank of America, as her attorney represented to the Government. As JULIE CHRISLEY was well aware, the "second" corporate resolution was never given to Bank of America. In reality, JULIE CHRISLEY made handwritten changes and backdated the 7C's

Productions corporate resolution in an effort to obstruct the Grand Jury's investigation of her criminal conduct.

All in violation of Title 18, United States Code, Section 1512(c)(2).

### Forfeiture

64. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 63 of this Superseding Indictment as if fully set forth herein.

65. Upon conviction for one or more of the offenses alleged in Counts 1 through 6 of this Superseding Indictment, the defendants, TODD CHRISLEY and JULIE CHRISLEY, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting or derived from proceeds obtained directly or indirectly as a result of said violations.

66. Upon conviction for the offense alleged in Count 7 of this Superseding Indictment, the defendant, JULIE CHRISLEY, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of said violations.

67. If, as a result of any act or omission of TODD CHRISLEY or JULIE CHRISLEY, any property subject to forfeiture:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the Court;

d.  Has been substantially diminished in value; or

e.  Has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 18, United States Code, Section 982(b), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c) to seek forfeiture of any property of said defendant up to the value of the forfeitable property.

A _____TRUE_____ BILL

_____
FOREPERSON

KURT R. ERSKINE
  *United States Attorney*

*Thomas J. Krepp*

THOMAS J. KREPP
  *Assistant United States Attorney*
Georgia Bar No. 346781

*Annalise K. Peters*

ANNALISE K. PETERS
  *Assistant United States Attorney*
Georgia Bar No. 550845

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181